UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | | |
|---|---|---|
| JOYCE PAULSON, | ) | |
| | ) | |
| Plaintiff, | ) | Civil No. 11-326-ART |
| | ) | |
| v. | ) | |
| | ) | **MEMORANDUM OPINION** |
| ERIC H. HOLDER, JR., | ) | **& ORDER** |
| U.S. Attorney General, et al., | ) | |
| | ) | |
| Defendants. | ) | |

\*\*\* \*\*\* \*\*\* \*\*\*

Joyce Paulson filed a complaint under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e). Paulson claimed that her supervisor, Eddie Simpson, created a hostile work environment and that when she complained about Simpson's actions to management they retaliated against her. Paulson's suit is both procedurally barred and substantially inadequate: she failed to exhaust her claim with the EEOC and has alleged facts that do not amount to a Title VII violation. Thus, the defendants' motion for summary judgment must be granted.

## BACKGROUND

On the morning of April 13, 2009, Paulson, a medical records technician for the Bureau of Prisons ("BOP"), was sitting at her desk in the medical records office of FCI-Manchester. R. 12 at 2; R. 9-2 at 3. Paulson alleges that her supervisor, Eddie Dwayne Simpson, entered the room and slapped her on the left side of her face. R. 12 at 2. Simpson then asked Paulson if she was going to "file on him" and whether she was going to make him coffee. R. 9 at 3. Paulson proceeded to do the former but not the latter; she reported the

incident the following day. *Id.* at 4. BOP management immediately reassigned Simpson so that he no longer supervised Paulson. *Id.* at 6; R. 9 at 4 ("Mr. Simpson remained reassigned to the Warden's office until his military deployment . . . in June 2009.") (citing R. 9-9 at 4-5).

On April 22, 2009, Paulson contacted an Equal Employment Opportunity ("EEO") Counselor. R. 9-2 at 4. A few months later, Paulson filed a formal EEOC complaint, alleging sex discrimination and sexual harassment on the basis on the incident. R. 9-3. On September 26, 2011, the Department of Justice's Complaint Adjudication Office found that the evidence failed to support Paulson's discrimination and harassment claims and denied her relief. R. 9-5 at 18.

Before the Complaint Adjudication Office issued its decision, however, Paulson contacted an EEOC Counselor a second time on August 3, 2011. This time she alleged that her supervisors retaliated against her for her prior complaint by (1) denying her an unspecified transfer, (2) refusing to pay her bonuses or step increases in April and June 2011, and (3) giving her poor performance evaluations in April 2010 and May 2011. R. 9 at 5. Paulson does not dispute that her second contact with an EEOC counselor was untimely. *See* 29 C.F.R. § 1614.105(a)(1) (requiring plaintiffs to contact a counselor within forty-five days of the retaliatory act). Paulson subsequently filed a formal EEOC complaint. R. 9-7.

Dissatisfied with the outcome of her EEOC proceedings, Paulson sued the United States and the Bureau of Prisons in December 2011 alleging hostile workplace discrimination and retaliation. R. 1. On March 29, 2012, the United States and the Bureau of Prisons moved to dismiss Paulson's suit, or, in the alternative, for summary judgment. R. 7.

## DISCUSSION

Because both parties have submitted matters outside the pleadings for the Court's consideration, the Court must evaluate the motion as one for summary judgment. Where "matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56," and "all parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d). The defendants' alternative motion for summary judgment alerted Paulson of the necessity of presenting pertinent material. *Ball v. Union Carbide Corp.*, 385 F.3d 713, 719 (6th Cir. 2008) (affirming a district court's decision to grant summary judgment when the defendant moved for summary judgment in the alternative and the plaintiff responded by submitting materials outside the pleadings). Moreover, Paulson has not filed a Rule 56(d) affidavit demonstrating that more time is necessary for her to discover essential facts. Fed. R. Civ. P. 56(d).

**I.     Hostile Work Environment Claim**

As an initial matter, Paulson has failed to exhaust her administrative remedies. This is fatal. In order to properly exhaust a claim before the EEOC, the claimant's charge must be "'sufficiently precise'" to give the defendant notice. *Younis v. Pinnacle Airlines, Inc.*, 610 F.3d 359, 361 (6th Cir. 2010) (quoting 29 C.F.R. § 1601.12(b)). And when a claim is not included in the EEOC charge, it generally cannot be brought in a lawsuit. *Id.* (citations omitted). Paulson hits that roadblock here. She never brought a hostile work environment claim at the EEOC stage. Even construing her claims liberally, the facts did not advise the defendant that a hostile work environment claim was lurking in the shadows. In Paulson's original EEOC charge, she only alleged that she was slapped. As the *Younis* court noted,

"the inclusion in an EEOC charge of a discrete act or acts . . . will not also support a subsequent, uncharged claim of hostile work environment unless the allegations in the complaint can be reasonably inferred from the facts alleged in the charge." *Id.* at 362 (internal quotation marks and citations omitted). If the facts in *Younis*—which involved several offensive comments over a multi-year period, *id.*,—do not generate such an inference, then Paulson's single incident of slapping certainly does not. Thus, this claim must be dismissed for lack of exhaustion.

Even if the Court could consider the claim, Paulson's allegations fail to state a prima facie case for hostile workplace discrimination. A hostile work environment is one that a reasonable person would find "is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (internal quotation marks and citation omitted). The severity and pervasiveness of the hostile conduct must be measured by all the circumstances of the victim's employment—for example, "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id.* at 23.

In an attempt to establish that a hostile work environment existed, Paulson alleges the following: (1) rumors of Simpson's bad behavior; (2) specific instances of bad conduct that Simpson directed towards her; (3) Simpson's inappropriate comments; and (4) an inappropriate response from her supervisors. None of these claims are sufficient to state a hostile workplace claim.

4

*The rumors.* After Paulson complained about Simpson to the EEOC, she heard rumors that Simpson had grabbed an employee by the throat and threw another to the floor. R. 12 at 3. Paulson also says that other BOP employees saw Simpson engage in rough horseplay with female employees. R. 12 at 3-4; R. 9-5 at 6-11. But Paulson learned of this physical harassment only after Simpson was removed as her manager. And while a plaintiff alleging a hostile work environment "does not need to be the target of or a witness to harassment" for that harassment to count towards a hostile work environment, she "does need to know about [the harassment]." *Berryman v. SuperValu Holdings, Inc.*, 669 F.3d 714, 718 (6th Cir. 2012); *Ladd v. Grand Trunk W. R.R., Inc.*, 552 F.3d 495, 500 (6th Cir. 2009). Thus, while Simpson's physical aggression may corroborate her allegation that he assaulted her, it is not proof that can be factored into the alleged hostile work environment.

*Specific Instances of Conduct.* In addition to the slap that precipitated her complaint, Paulson alleges that Simpson also grabbed her arm on an unspecified occasion. R. 12 at 6. Paulson admits that she did not find the arm grab offensive. Where the victim "does not subjectively perceive the environment to be abusive . . . there is no Title VII violation." *Harris*, 510 U.S. at 21.

This leaves one incident of touching—the slap. But one incident of touching, while offensive, is not "sufficiently severe or pervasive" to constitute a hostile work environment. *Meritor Savings Bank v. Vinson*, 477 U.S. 57, 67 (1986). Thus Simpson's slap alone—while it may have both shocked and hurt Paulson—cannot alone make out a hostile workplace claim.

*Simpson's Comments.* Paulson contends that Simpson "had a very macho attitude" and "directed inappropriate conduct" towards the women that he supervised. R. 12 at 2.

5

Although Paulson asserts that Simpson made smart comments or talked down to the females he supervised, she could not cite a specific example of an inappropriate comment by Simpson.  R. 9-8 at 4.  Merely asserting that female employees were subject to "derogatory sex-based comments on a daily basis" is not enough to survive summary judgment.  *Ladd*, 552 F.3d at 501 (noting that, without specifics, "it is difficult to []judge [the comments'] severity").  One could envision some very offensive remarks that might fall under the heading of a "smart comment."  But one could equally picture a series of innocuous remarks resulting in the same description.  The Court must construe the facts in the plaintiff's favor, not let its imagination run wild on her behalf.

*Supervisors' Response*: Paulson believes that when she filed her complaint she was treated "like a bad person" and that her superiors tried to force her out to allow Simpson to return as management.  R. 12 at 4.  Like her allegations about Simpson's inappropriate comments, this contention is also too vague to support a hostile workplace claim. *See Ladd*, 552 F.3d at 501

Where "the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  Even in the light most favorable to her, *Scott v. Harris*, 550 U.S. 372, 378 (2007) (quotation omitted), Paulson has not proven a genuine issue of material fact sufficient to survive the defendants' motion.

## II.     Retaliation Claim

Nor can Paulson make a prima facie case for retaliation.  None of Paulson's professional slights are sufficiently adverse to state a claim under Title VII.

First, it is undisputed that Paulson did not properly exhaust her claim by contacting an EEOC counselor within forty-five days of the retaliatory act. 29 C.F.R. § 1614.105. Paulson argues that she did not have to exhaust her administrative remedies for her retaliation claim. She contends that the temporal proximity between her original complaint and the retaliatory act of rating her as "exceeds," rather than "outstanding," when coupled with the fact that this lower evaluation was unwarranted, means that the retaliation was a foreseeable consequence of her original complaint. R. 12 at 19. She relies on *Moore v. KUKA Welding Systems & Robot Corp.*, 171 F.3d 1073 (6th Cir. 1999), which found that temporal proximity between filing an EEOC complaint and the retaliatory act, when coupled with "[o]ther incidents . . . [such as] . . . unwarranted criticism of plaintiff's work . . . support the [] finding that defendants retaliated against plaintiff." *Id.* at 1080. But receiving a performance evaluation of "exceeds" rather than "outstanding" barely qualifies as unwarranted criticism of one's work. Moreover, Paulson received her first "exceeds" evaluation (the second-highest rating, R. 9 at 5) from a different supervisor ten months after her complaint. She offers no reason for the Court to believe that her new supervisor would be tempted to retaliate for her 2009 complaint. The claim is therefore barred.

Even if Paulson could establish a casual connection between her complaint and her evaluations, none of the harms she claims are sufficiently adverse to state a claim under Title VII. Paulson alleges three retaliatory actions: a denial of a transfer, nonpayment of step increases and bonuses, and lower performance evaluations. To state a claim, the retaliatory action must be "materially adverse" to a plaintiff's employment. *See Wasek v. Arrow Energy Services, Inc.*, 2012 WL 2330824, at *6 (citing *Kocsis v. Multi–Care Mgmt., Inc.*, 97 F.3d 876, 885 (6th Cir. 1996)). Examples of materially adverse actions are "a termination of

7

employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, [or] significantly diminished material responsibilities." *Id.* (citing *Bowman v. Shawnee State Univ.*, 220 F.3d 456, 461–62 (6th Cir. 2000)).

First, Paulson states that she was denied an unspecified transfer. She does not, however, state that this denial disadvantaged her in any way. Nor does she explain how the denial was connected to her 2009 complaint. Thus, her transfer denial cannot count as evidence of retaliation. *See Hunter v. Sec'y of U.S. Army*, 565 F.3d 986, 997 (6th Cir. 2009) (holding that the transfer must result in "injury or harm" to count as an adverse action).

Second, Paulson states that her supervisors denied her bonuses and step increases following her initial complaint even though she had received them every other year. R. 12 at 5. She claims that her supervisors singled her out for this treatment because "all other female employees in her division received either the step increase or the bonus." R. 12 at 5. Even assuming Paulson's allegations that her treatment was unique are true—and there is some reason to believe that they are not, *see* R. 14 at 4—Paulson has failed to allege any facts that would demonstrate she was entitled to either a bonus or a pay increase for the years in question. *Compare White v. Baxter Healthcare Corp.*, 533 F.3d 381, 403 (6th Cir. 2008) (holding that denial of pay increase to which plaintiff was entitled was adverse employment action), *with E.E.O.C. v. SunDance Rehab. Corp.*, 466 F.3d 490, 501 (6th Cir. 2006) (holding that there is no adverse action where an employer did not pay severance benefits to which the plaintiff was not entitled), *and Barrett v. Lucent Techs., Inc.*, 36 F. App'x 835, 843-44 (6th Cir. 2002) ("Plaintiff has not shown that she was entitled to the bonuses . . . and thus has not shown that she suffered an adverse employment action."); *see also Miller v. Am. Family Mut. Ins. Co.*, 203 F.3d 997, 1006 (7th Cir. 2000) ("[T]he loss of a bonus is not an

adverse employment action . . . where the employee is not automatically entitled to the bonus.").

Finally, Paulson alleges that her lower performance evaluations—from "outstanding" to "exceeds"—constitute adverse action. But negative evaluations, by themselves, are not adverse employment actions. For example, in *Primes v. Reno*, 190 F.3d 765, 767 (6th Cir. 1999), the Sixth Circuit held that a rating of "fully successful" rather than "excellent" or "outstanding" was "not the type of adverse employment action contemplated by Title VII." *See also Mowery v. Columbus*, No. 2006-Ohio-1153, 2006 WL 620902, at *6 (Ohio Ct. App. Mar. 14, 2006) (holding that "negative statements in personnel file do not, by themselves, represent an adverse employment action" (citation omitted)). And, as mentioned above, she has not tied any adverse ratings to her protected conduct. Faint praise may be damning, but it does not support a Title VII action.

## CONCLUSION

It is therefore **ORDERED** that the defendants' motion for summary judgment, R. 7, is **GRANTED**. Because the pleadings and exhibits contain personal information about Paulson and non-parties, it is further **ORDERED** that the defendants' motions to seal their pleadings, R. 8 and R. 13, are **GRANTED**. The Clerk shall **FILE** the pleadings, and attached exhibits, R. 7; R. 9; R. 14, **UNDER SEAL**.

This the 17th day of July, 2012.



Signed By:
*Amul R. Thapar*
United States District Judge

9